POLSTON, J.,
dissenting.
Because the majority’s opinion seriously violates the Federal Arbitration Act and its accompanying federal substantive law,[22] I respectfully dissent. This case is controlled by the United States Supreme Court’s recent decision in Rent-A-Center, West, Inc. v. Jackson, — U.S. -, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (holding that the arbitrator, rather than the court, is to decide the enforceability of the arbitration agreement, as required by the contract, because Jackson did not challenge the delegation provision specifically).
Once again, this Court erroneously applies Florida law to invalidate an arbitration agreement in violation of the Federal Arbitration Act. See Cardegna v. Buckeye Check Cashing, Inc., 894 So.2d 860 (Fla.2005) (applying Florida law to hold that Florida courts rather than an arbitrator should make determination), rev’d, Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 446, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (rejecting “the Florida Supreme Court’s conclusion that enforceability of the arbitration agreement should turn on ‘Florida public policy and contract law,’ 894 So.2d at 864”). As provided by the Federal Arbitration Act (FAA), the arbitration agreement should be enforced as agreed by the parties, not stricken at the whim of this Court. See Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., — U.S. -, 130 S.Ct. 1758, 1774-75, 176 L.Ed.2d 605 (2010) (noting that the FAA requires courts to “give effect to the contractual rights and expectations of the parties,” parties who are free to structure their arbitration agreement regarding how the arbitration is to be done and what it will cover) (quoting Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).
On May 23, 2003, Gayle Shotts signed an Admissions Agreement and a separate Resident and Facility Binding Arbitration Agreement for Edward Clark’s admission to Tandem Health Care of Winter Haven, a skilled nursing facility located in Winter *482 Haven, Florida. The separate arbitration agreement states that the parties acknowledge that the admission is “a transaction involving interstate commerce” and that the parties expressly agree that “this Agreement will be governed by the Federal Arbitration Act, 9 USC § 1-16 (‘FAA’).”
The scope of the arbitration agreement is very broad, applying to “any dispute that might arise during Ed Clark’s ... stay at Tandem Health Care of Winter Haven.” (Emphasis added.) The arbitration agreement further states:
This Agreement includes, but is not limited to, violations of any right granted to the Resident by law, including statutory resident’s rights, or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice or any other claim based on any alleged departure from accepted standards of medical or health care or safety, whether sounding in tort resulting in personal injury, or in contract. In no event shall this Agreement apply to any Facility dispute with Resident regarding payment for services rendered by Facility during Resident’s stay.
Unless otherwise agreed to by the parties, the arbitration hearing shall be conducted before a panel of three arbitrators, (selected from the AHLA Procedures Panel), one chosen by each side in the dispute with the third to be chosen by the two arbitrators previously chosen. The arbitrator(s) shall be chosen within thirty (30) days of the service of the arbitration notice. The arbitration hearing and other proceedings relative to the arbitration of the claim, including discovery, shall be conducted in accordance with the AHLA Procedures that do not conflict with the FAA. The parties agree that damages awarded, if any, in an arbitration conducted pursuant to this Binding Arbitration Agreement shall be determined in accordance with the provisions of Florida law applicable to a comparable civil action, except that the parties acknowledge that the arbitrators shall have no authority to award punitive damages or any other damages not measured by the prevailing party’s actual damages, and the parties expressly waive their right to obtain such damages in arbitration or in any other forum. The arbitration panel shall have authority to award equitable relief (i.e. relief other than monetary), should the arbitrators so decide.
Each party may be represented by counsel in connection with an arbitration proceeding covered under this Agreement, and each party agrees to bear its own attorneys’ fees and costs. In the event that any party to this Agreement refuses to go forward with arbitration, the party compelling arbitration reserves the right to proceed with arbitration and the Resident and the Facility expressly acknowledge the applicability of the FAA allowing the aggrieved party to petition an appropriate court for enforcement of this Agreement and to obtain a stay of any other proceeding. Submission of any dispute under this Agreement may only be avoided as specifically allowed by the FAA. To the extent permitted by applicable law, any party to this Agreement who refuses to go forward with arbitration hereby acknowledges that the arbitrator will go forward with the arbitration hearing and render a binding decision without the participation of the party opposing arbitration or despite their absence at the arbitration hearing.
[[Image here]]
In the event that any portion of this Agreement will be determined to be invalid or unenforceable, the remainder of *483 this Agreement will be deemed to continue to be binding upon the parties hereby in the same matter as if the invalid or unenforceable provision were not a part of the Agreement. In the event that this entire Agreement would be determined to be invalid and unenforceable, then, and only then, the parties agree to revert to the applicability of Paragraph 40 of the Admission Agreement between the parties, which requires mandatory mediation and mandatory non-binding arbitration.
(Emphasis added.)
The contract explicitly provides that the FAA applies, and otherwise acknowledges that the transaction involves interstate commerce that brings it within the scope of the FAA. Therefore, the issue of “who decides” is governed by federal substantive law rather than Florida law. See Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1033 (11th Cir.2003) (“[WJhether a court or arbitrator is to decide particular issues is not a question of contract law, but is instead governed by the FAA; it is a federal law issue to be decided under the ‘body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].’ ”) (quoting Moses H. Cone Mem’l Hosp., 460 U.S. at 24, 103 S.Ct. 927). Specifically, this “who decides” issue is controlled by the recent United States Supreme Court decision of Jackson. The Jackson decision requires that the arbitration panel, rather than the court, decide the enforceability of the terms of the agreement because Shotts does not challenge the delegation provision specifically. See Jackson, 130 S.Ct. 2772 (holding that the arbitrator, rather than the court, is to decide the enforceability of the arbitration agreement, as required by the contract, because Jackson did not challenge the delegation provision specifically).
Instead of properly applying Jackson, the majority of this Court mistakenly attempts to distinguish it on the basis that “unlike the situation in Jackson, the entire arbitration agreement in the present case operated as the ‘written provision ... to settle by arbitration a controversy,’ in the section 2 lexicon.” Majority op. at 480. However, in both Jackson and this case, the arbitration agreement is a separate, stand-alone agreement rather than a section of one contract. In both cases, the entire arbitration agreement is challenged.
Significantly, the majority also erroneously states that there is no delegation provision in the arbitration agreement at issue in this case. See majority op. at 480. However, the agreement provides that “any dispute” will be arbitrated. Petitioner’s challenges to the enforceability of the arbitration agreement are within the scope of the agreement because they are within the scope of “any dispute” that might arise during the stay at the facility.[23] Therefore, the determination of enforceability of the arbitration agreement that would have been determined by the court as a gateway matter has been clearly and unmistakably delegated to arbitration by the language of the contract, as in Jackson, 130 S.Ct. at 2777 n. 1 (citing First Options of Chicago v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).
*484 Petitioner has made no challenge to the delegation provision of the arbitration agreement that requires any dispute to be arbitrated. Therefore, enforceability, as in Jackson, must be determined by the arbitration panel rather than the court, together with any other disputes[24] as the contract requires.
Accordingly, I respectfully dissent.
CANADY, C.J., concurs.

. "Section 2 [of the Federal Arbitration Act] is a congressional declaration of liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also Vaden v. Discover Bank, 556 U.S. 49, 129 S.Ct. 1262, 1271, 173 L.Ed.2d 206 (2009) ("The 'body of federal substantive law’ generated by elaboration of FAA § 2 is equally binding on state and federal courts.”).

. The additional language in the agreement does not restrict this in any way. The only restriction stated in the agreement, which is outside the scope of arbitration, is over the payment for services. The listing of the types of disputes is not all-inclusive by the contract's explicit terms of "but is not limited to.” Moreover, the enforceability of the agreement is contemplated because it includes remedies associated with "fraud or misrepresentation. ’'

. The dispute over severability should also be determined by arbitration rather than the court. The majority refuses to enforce the explicit terms of the contract that provides for severability, under the surprising rationale of not wanting to rewrite the parties' contract. It seems to me that by ignoring the explicit provision of the contract requiring severability, the majority has rewritten the contract to its liking to void an arbitration agreement. This violates the FAA. See Buckeye, 546 U.S. at 443, 126 S.Ct. 1204 (“To overcome judicial resistance to arbitration, Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.... ”).